UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

                    Plaintiff,

          v.

LT. CHARLA JAMES-HUTCHISON,
SGT. JACKIE CARUSO,

                    Defendants.

CASE NO. 16-5314 RJB

ORDER ON PLAINTIFF'S
MOTION FOR SUBPOENA
FORMS, AND PETITIONS FOR
WRITS OF HABEAS CORPUS
TESTIFICANDUM

    THIS MATTER comes before the Court on Plaintiff's Motion to Request Four Subpoena Forms to Call Four Pierce County Employees to be Witnesses at Trail [sic] (Dkt. 170), Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for Plaintiff Michael Denton (Dkt. 171) and Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for Oscar Sanabria (Dkt. 172).

    On April 28, 2016, Plaintiff, a prisoner acting pro se, filed this case pursuant to 42 U.S.C. § 1983. Dkts. 1 and 4. In his Second Amended Complaint, Plaintiff alleges that while he was a

pre-trial detainee in the Pierce County, Washington jail, Defendants Lieutenant Charla James-Hutchinson and Sergeant Jackie Caruso violated his due process rights when they revoked his good time credits and placed him in administrative segregation. Dkt. 99. He asserted that Defendants Sheriff Paul Pastor and Captain Marvin Spencer violated his first amendment rights when they created a policy which denied Plaintiff (and all prisoners in administrative segregation) receipt of incoming publications, including subscription magazines and books. *Id*. On January 5, 2018, the undersigned adopted a Report and Recommendation (Dkt. 155), and dismissed all Plaintiff's claims except the claim that Defendants Lieutenant Charla James-Hutchinson and Sergeant Jackie Caruso violated his due process rights when they revoked his good time credits. Dkt. 166. (The caption for this order reflects, and all future pleadings shall reflect, that the only defendants left are Defendants James-Hutchinson and Caruso). This case is set to begin trial on August 13, 2018 on one claim: Plaintiff's claim that Defendants James-Hutchinson and Caruso denied him due process when they revoked his good time credits.

On January 25, 2018, Plaintiff filed the pending motion and two petitions. Dkts. 170-172. The Defendants responded and Plaintiff replied. Dkts. 175 and 178. The parties then agreed to attempt to settle the case, and the matter was referred to a U.S. Magistrate Judge for a settlement conference. The pending motion and two petitions were renoted for consideration on May 25, 2018. The case did not settle. The motion and petitions are now ripe.

**Plaintiff's Motion to Request Four Subpoena Forms to Call Four Pierce County Employees to be Witnesses at Trial**. In this motion, the Plaintiff moves the Court to send him four subpoena forms in order that he may subpoena Pierce County, Washington employees: "Sgt. Forrest Ake, Officer Sandoval, Officer Elizabeth Earp, and Officer Kristie Herbison." Dkt. 170. In response, the Defendants state that "they have no objections to the Court forwarding forms to

Plaintiff, if that is how the Court wants the subpoenas to issue." Dkt. 175. The Defendants argue, however, that the Court should reserve ruling on this matter until the pre-trial order is filed. *Id.*

Plaintiff's motion for four subpoena forms (Dkt. 170) should be granted. The Clerk should be directed to send Plaintiff four subpoena forms with the employee names filled out.

**Writ of Habeas Corpus Ad Testificandum Generally.** Under 28 U.S.C. §2241 (c)(5), "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [i]t is necessary to bring him into court to testify or for trial."

**Petition for Writ of Habeas Corpus Ad Testificandum for Plaintiff Michael Denton**. When determining whether it should issue a writ of habeas corpus ad testificandum to bring a state prisoner plaintiff into federal court, the district court must exercise its discretion based upon consideration of "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *See Wiggins v. Alameda Cty.*, 717 F.2d 466, 469 n. 1 (9th Cir. 1983).

*Wiggins* was decided in 1983, around 35 years before the present day, with all sorts of technology advances in the courtroom. Under Fed. R. Civ. P. 43 (a), "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." There is sufficient good cause and compelling circumstances in this case to have the Plaintiff appear via live videoconferencing. Plaintiff has already appeared in front of the magistrate judge for the settlement conference using this technology.

Considering the availability of live videoconferencing, the question, then, is whether Plaintiff's physical presence at court for the trial outweighs the considerations of security risks and expenses, which are discussed below.  *See Howard v. Farmers Insurance Company, Inc.,* 2017 WL 3891654 (C.D. Cal. Sept. 6, 2017)(denying pro se prisoner plaintiff's petition for writ of habeas corpus ad testificandum and finding under the *Wiggins* factors that he could prosecute his breach of contract case in California federal court via video conference while being housed in Florida state prison).

**Factor One**. As to the first factor, Plaintiff is proceeding *pro se* and so, he must, in some manner, prosecute the case to resolution.  While there are challenges for Plaintiff to prosecute his claim via videoconference, his physical presence is not necessary for him to "substantially further the resolution of the case."  *Howard*, at 2.  The claim is straight forward, and primarily turns on credibility of the witnesses.  In accord with the Report and Recommendation, which the undersigned adopted, the issue remaining in this case is whether Defendants James-Hutchinson and Caruso denied him due process when they revoked his good time credits.  Plaintiff maintains that they "'failed to allow Plaintiff to call witness[es] at the hearing or witness statements from witness[es] to be allowed at the hearing.'"  Dkt. 155, at 7 (*quoting* Plaintiff's declaration (Dkt. 134, at 1)).  Defendants assert that Plaintiff did not identify any witnesses he wished to call, although he had an opportunity to do so.  *Id.* (*citing* Defendant James-Hutchison's declaration (Dkt. 155, at 5)).  This court must also consider, if Plaintiff chooses to testify, whether his testimony is relevant and necessary.  *See Greene v. Prunty*, 938 F. Supp. 637, 639 (S.D. Cal. 1996).  Although Plaintiff's testimony relevant and necessary because the case turns on Plaintiff's credibility, his physical presence in the courtroom is not necessary due to the availability of video conferencing.

**Second Factor**. As to the second factor, Plaintiff poses significant security risks. The record in this case is replete with several instances of Plaintiff's violent and poor behavior, which includes assaults on jail and prison staff, threats against custodial staff and others, attempts at self-harm, and non-compliance with custodial staff directives. Dkt. 140-1. Recently, the Washington Court of Appeals Division II affirmed Plaintiff's conviction, after a jury trial, of two counts of custodial assault and one count of felony harassment against jail staff. *State v. Denton*, 49115-0-II, 2018 WL 720387 (Wash. Ct. App. Feb. 6, 2018). Division II found the following facts:

> While incarcerated in the Pierce County Jail, on two separate occasions Denton threw liquid from his cell toilet on staff. On November 16, 2015, Denton threw an unknown liquid on Deputy Andy Powell as he arrived to deliver Denton a sack lunch. The liquid hit Powell's shirt, pants and left forearm. Powell testified that Denton, who remained locked in his cell throughout the incident, also verbally threatened to attack Powell. The State charged Denton with custodial assault against Powell and felony harassment.
>
> On November 18, 2015, Denton again threw liquid at Deputies Matt Watson and Mario Moreno. During meal time, Moreno approached Denton's cell and discovered that Denton blocked the "trap door" with his hand and arm. Moreno ordered Denton to remove his arm and radioed Watson for assistance. Watson arrived and also ordered Denton to remove his arm. Denton refused. Watson threatened to hit Denton's hand with his service flashlight if he did not. Watson attempted to clear Denton's arm from the trap door. Denton resisted, and Watson struck Denton's hand "medium" hard three times with his flashlight.
>
> Denton withdrew his arm, picked up his cup, and announced that he was going to throw feces on the deputies. Denton dipped his cup in the toilet and two times threw the contents at the inner door of his cell. Watson backed away and did not get hit. However, liquid from Denton's second attempt passed through a gap in the Plexiglas inner door and contacted Moreno's back, left arm, and parts of his hair.

*State v. Denton*, 49115-0-II, 2018 WL 720387, at *1 (Wash. Ct. App. Feb. 6, 2018). Additionally, Plaintiff's criminal history includes multiple assault convictions and a conviction for disarming a police officer. Dkt. 27, at 25. The security risks posed by Plaintiff weighs against Plaintiff's physical presence in the courtroom.

**Third Factor.** The third factor in considering whether to issue the writ, the expense of Plaintiff's transportation and safekeeping, also counsels against his physical presence for the trial. Although the record does not contain an exact amount for transport and housing, Plaintiff is being housed at the Washington State Penitentiary in Walla Walla, Washington, about 275 miles away from Tacoma. At a five or six hour drive each way, this distance would require Plaintiff be housed overnight. Transportation, housing, and security for Plaintiff to appear in person for this trial would be substantial. The factor weighs against Plaintiff's physical presence in the courtroom.

**Fourth Factor**. The final factor (whether the case could be stayed until Plaintiff is released without prejudice), does not favor or disfavor his physical presence in the courtroom. While the record does not contain Plaintiff's exact release date, Plaintiff was sentenced to serve two 60 month consecutive sentences in June of 2017 for custodial assault and felony harassment. Dkt. 27. Accordingly, Plaintiff will not be released from custody on those convictions until as late as June of 2027. This case cannot reasonably be stayed until Plaintiff is released, but this factor does not demand that he be physically present in the courtroom.

**Conclusion**. In weighing the above factors, Plaintiff's petition for writ of habeas corpus ad testificandum for himself should be denied. While Plaintiff's appearance via teleconference poses some challenges, those challenges do not outweigh the security concerns and expenses associated with bringing Plaintiff to the courthouse. There is good cause to have Plaintiff appear via teleconference. This course of action balances Plaintiff's need to prosecute his case with the security risks and costs in bringing him physically to the courthouse.

**Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for Witness Oscar Sanabria**. In order to grant the writ of habeas corpus ad testificandum the Court must determine

whether an inmate-witness' testimony is relevant and necessary. *See Greene v. Prunty*, 938 F. Supp. 637, 639 (S.D. Cal. 1996). "This determination depends ultimately upon whether the probative value of the testimony justifies the expense and security risk associated with transporting an inmate-witness to court from a correctional facility." *Id.*

The Plaintiff's petition for a writ of habeas corpus ad testificandum for prisoner-witness Oscar Sanabria (Dkt. 172) should be denied without prejudice. Plaintiff has made no showing that Mr. Sanabria's testimony is relevant or necessary. The Plaintiff, as the party requesting a writ of habeas corpus ad testificandum must set forth in a sworn affidavit or declaration: (1) what Mr. Sanabria will testify to; (2) how the plaintiff knows that Mr. Sanabria will testify as such; and (3) why the testimony is necessary. *Greene,* at 639. Plaintiff has failed to do so and so the petition should be denied.

If Plaintiff renews his petition, the Defendants can oppose the writ by showing that: (1) Mr. Sanabria would not provide such testimony, (2) that such testimony is unnecessary or (3) that the movement of the prisoner would create actual and substantive security risks. *Greene,* at 639. (Mr. Sanabria's trial for first degree rape and first degree kidnapping is set to begin on June 21, 2018. *State v. Sanabria*, Pierce County, Washington Superior Court case number 16-1-01414-5. He will be sentenced in another case on July 13, 2018 for his plea to second degree robbery and vehicular assault. *State v. Sanabria*, Pierce County, Washington Superior Court case number 17-1-02557-9.) Further, the parties should address whether Mr. Sanabria could also appear remotely.

**Costs**. "[A] district court judge has the discretion to allocate the costs of compliance with a writ ad testificandum in any number of combinations. These combinations include the . . . sharing of costs . . . as well as imposing full costs on the United States, *see* 28 U.S.C. §§ 567(2),

569(b), or . . . imposing the full costs on the state." *Wiggins v. Alameda Cty.*, 717 F.2d 466, 469 (9th Cir. 1983).

At this point, both petitions for a writ ad testificandum have been denied. The Court will not reach the Defendants' arguments regarding costs at this time.

### ORDER

It is **ORDERED** that:

- Plaintiff's Motion to Request Four Subpoena Forms to Call Four Pierce County Employees to be Witnesses at Trail [sic] (Dkt. 170) **IS GRANTED**;
  - The Clerk is directed to send Plaintiff four subpoena forms with the employee names filled out.
- Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for Plaintiff Michael Denton (Dkt. 171) **IS DENIED**; and
- Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for Oscar Sanabria (Dkt. 172) **IS DENIED WITHOUT PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of May, 2018.

ROBERT J. BRYAN
United States District Judge